IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

```
UNITED STATES OF AMERICA      )
                              )
      v.                      )      CR 322-011
                              )
KENYATTE HARDEN               )
CODY HARDEN                   )
LEOTIS LOVETT                 )
TRAMAINE LYLES                )
```
_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Defendants Kenyatte Harden, Cody Harden, Leotis Lovett, and Tramaine Lyles move to suppress evidence obtained pursuant to the Title III wiretap authorized by order of United States District Judge Dudley H. Bowen, Jr., arguing the affidavit in support of the application does not establish probable cause or the requisite necessity for granting a wiretap request. (Doc. nos. 303, 314, 317, 387.)  The Court allows adoption by Defendant Tramaine Lyles of Defendant Cody Harden's motion to suppress and recognizes Defendant Lovett has withdrawn his minimization arguments such that only his probable cause and necessity arguments remain at issue, (doc. no. 404).  Upon consideration of the briefs, the Court **REPORTS** and **RECOMMENDS** Defendants' motions to suppress be **DENIED** without an evidentiary hearing.

**I.      BACKGROUND**

On November 22, 2021, Judge Bowen signed an Order authorizing a wiretap on Target Telephone-1 ("TT1"), a cell phone used by Defendant Cody Harden.  (Doc. no. 356-1, pp. 92-103 (hereinafter "Order").)  In support of its wiretap application, the government submitted a

72-page affidavit from Drug Enforcement Agency ("DEA") Task Force Officer ("TFO") Robert Livingston, a DEA Special Agent for approximately twenty years prior to becoming a TFO. (Id. at 20-91 (hereinafter "Aff.").) TFO Livingston detailed the extensive, multi-year investigation of a drug conspiracy led by Cody and Kenyatte Harden. TFO Livingston explained the use of alternative investigative techniques met with limited success short of disrupting and dismantling the drug trafficking organization ("DTO"), including "the use of confidential sources, a search warrant, sources of information, analysis of telephone toll records, consensual recordings of telephone call using a confidential source, and controlled purchases of drugs using some these same confidential sources." (Doc. no. 356, p. 2.)

Judge Bowen concluded there was probable cause to believe (1) the investigation targets had committed, were committing, and would continue to commit drug distribution offenses in violation of 21 U.S.C. § 841(a)(1) and § 846; (2) the wiretap would yield relevant information concerning the suspects and unidentified co-conspirators; and (3) TT1 would continue to be used in connection with these target offenses. (Order, pp. 1-3.) Judge Bowen also concluded the wiretap was necessary because the twelve alternative investigative techniques had either failed, reasonably appeared unlikely to succeed, or were too dangerous. (Id. at 3.) Of three authorized wiretaps, Defendants limit their arguments to the wiretap on TT1. Although Defendant Lovett originally challenged the two other wiretaps on minimization grounds, (doc. no. 387, pp. 18-29), those issues have been resolved, (doc. no. 404). Thus, the Court's analysis is limited to the defense arguments related to TT1.

The government's investigation resulted in a forty-four-count indictment brought against seventeen Defendants for a range of drug and firearm charges, including a conspiracy charge. United States v. Harden, CR 322-011, doc. nos. 3, 9, 200 (S.D. Ga. Sept. 8, 2022).

## II.   NO EVIDENTIARY HEARING IS NECESSARY

The decision to grant or deny a request for an evidentiary hearing on a motion to suppress is left to the Court's discretion. United States v. Cooper, 203 F.3d 1279, 1285 (11th Cir. 2000); United States v. Sneed, 732 F.2d 886, 888 (11th Cir. 1984). "[A] criminal defendant has no absolute or presumptive right to insist that the district court take testimony on every motion." United States v. Lewis, 40 F.3d 1325, 1332 (1st Cir. 1994) (affirming denial of a motion for evidentiary hearing on motion to suppress) (citation omitted). Thus, the burden is upon the defendant to allege facts that would, if proven true, entitle him to relief. United States v. Richardson, 764 F.2d 1514, 1527 (11th Cir. 1985). A district court should grant a request for an evidentiary hearing when the moving papers, including the affidavits, are "sufficiently definite, specific, detailed, and nonconjectural, to enable the court to conclude that a substantial claim is presented." Id. (citations omitted).

Here, there is no reason for a hearing because the motions attack the validity of the wiretap order and the supporting application, and a ruling can be made based on a plain reading of these documents. See United States v. Perez, 661 F.3d 568, 581 (11th Cir. 2011) (affirming denial of motion to suppress evidence obtained through court-ordered electronic surveillance without holding evidentiary hearing); see also 18 U.S.C. § 2518(3)(c) (explaining issuing court makes determination authorizing wiretap based on "facts submitted by the applicant").

3

Moreover, there are no allegations the supporting affidavit contains statements that are false or made with reckless disregard of the truth.  See Perez, 661 F.3d at 581 n.18.

### III. DISCUSSION

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. amend. IV.  Thus, a search warrant must:  (1) be based on probable cause; (2) be supported by a sworn affidavit; (3) particularly describe the place to be searched; and (4) particularly describe the items to be seized.  See id.; United States v. Carson, 520 F. App'x 874, 888 (11th Cir. 2013).  The Fourth Amendment's prohibition against unreasonable searches applies to evidence obtained by wiretap.  United States v. Goldstein, 989 F.3d 1178, 1192 (11th Cir. 2021).

Defendants challenge the necessity of the wiretap and probable cause supporting the application, alleging they are "aggrieved persons" within the meaning of 18 U.S.C. §§ 2510(11) and 2518(10)(a).  Conceding "aggrieved person" status, the government argues the supporting affidavit demonstrates probable cause and necessity and, even in the absence of one or both, the good faith exception prevents suppression of the evidence.  Because the defense motions and response briefs are substantially similar, the Court cites only Defendant Cody Harden's brief and the government's response thereto.  (Doc. nos. 303, 356.)

#### A. Title III Wiretap Requirements

Among other things, a wiretap application must include:

> a full and complete statement of the facts and circumstances relied upon by the applicant . . . including details as to the particular offense . . . , a particular description of . . . the type of communications sought to be intercepted, the identity of the person . . . whose communications are to be intercepted, and a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous.

United States v. Gonzalez-Perez, 283 F. App'x 716, 720 (11th Cir. 2008) (*per curiam*) (citing 18 U.S.C. § 2518(1)(b), (c)).  Upon proper application, the court may then issue an order authorizing the requested wiretaps if there is probable cause to believe (1) an individual is committing or has committed a "qualifying offense," defined in 18 U.S.C. § 2516(1)(e) to include any drug distribution offense; (2) particular communications concerning that offense will be obtained through the requested interception, (3) the facilities from which, or the place where, the . . . communications are to be intercepted are being used . . . or commonly used by such person; and (4) "normal investigative procedures have been tried and have failed or reasonably appear unlikely to succeed if tried or to be too dangerous." Id. at 720-21.

"[T]he Court is mindful wiretapping is particularly appropriate when the telephone is routinely relied on to conduct the criminal enterprise under investigation." United States v. Graham, Case No. 2:20-cr-47, 2021 WL 2593630, at *15 (S.D. Ga. June 24, 2021) (internal quotation marks and citation omitted), *adopted by* 2021 WL 4352320 (S.D. Ga. Sept. 24, 2021).  Moreover, the judge to whom the wiretap application is made "is clothed with broad discretion in [his] consideration of the application." United States v. Alonso, 740 F.2d 862, 868-69 (11th Cir. 1984) (citation omitted).  The Court is also mindful that a wiretap issued pursuant to Title III enjoys a presumption of validity. United States v. Weber, 808 F.2d 1422, 1424 (11th Cir. 1987) (*per curiam*).  Thus, Defendants bear the burden of overcoming that

5

presumption to prove the wiretap was obtained unlawfully.  Graham, 2021 WL 2593630, at *15 (citation omitted).

### 1.     The Standard for Evaluating Probable Cause

"An application for a wiretap authorization must be supported by the same probable cause necessary for a search warrant."  United States v. Nixon, 918 F.2d 895, 900 (11th Cir. 1990); see also Vista Mktg., LLC v. Burkett, 812 F.3d 954, 970 (11th Cir. 2016) (same).  In deciding whether to sign a search warrant, the issuing judge must make a "practical, commonsense decision" whether, given all the information in the supporting affidavit, "there is a fair probability that contraband or evidence of a crime will be found in a particular place."  United States v. Jiminez, 224 F.3d 1243, 1248 (11th Cir. 2000) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)).  The issuing judge is entitled to rely on the opinions and conclusions of experienced law enforcement affiants, who may ascribe entirely different meaning to seemingly innocent conduct because of their experience and training.  United States v. Gonzalez-Renteria, Crim. Act. File No. 1:17-cr-0292-ELR-AJB, 2021 WL 9758616, at *4 (N.D. Ga. Dec. 9, 2021) (citations omitted), adopted by 2022 WL 17327302 (N.D. Ga. Nov. 29, 2022).

"[P]robable cause is a fluid concept – turning on the assessment of probabilities in particular factual contexts[.]"  United States v. Brundidge, 170 F.3d 1350, 1352 (11th Cir. 1999) (quoting Gates, 462 U.S. at 232).  The validity of the warrant is evaluated based on the totality of the circumstances.  See id.; see also United States v. Flowers, 531 F. App'x 975, 981 (11th Cir. 2013) (per curiam) ("Probable cause to support a search warrant exists when

the totality of the circumstances allow a conclusion that there is a fair probability of finding contraband or evidence at a particular location.").

In the Eleventh Circuit, a court reviewing the decision of a judicial officer concerning the existence of probable cause gives "great deference" to that determination. United States v. Bradley, 644 F.3d 1213, 1263 (11th Cir. 2011) (citing Brundidge, 170 F.3d at 1352). Thus, "the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." Cauchon v. United States, 824 F.2d 908, 911-12 (11th Cir. 1987) (citing Gates, 462 U.S. at 238-39). Defendants have the burden of proof to establish the warrant was defective. Gonzalez-Renteria, 2021 WL 9758616, at *3 (citations omitted).

Defendants concede probable cause to show some Defendants possessed or distributed illegal narcotics, but they contend probable cause is lacking as to the existence of an overarching conspiracy or DTO. (See, e.g., doc. no. 303, pp. 20-21.) The Court concludes the supporting affidavit establishes probable cause that intercepted communications on TT1 would relate to an ongoing drug distribution conspiracy.

A drug conspiracy consists of at least two people who agreed to unlawfully distribute and dispense controlled substances where the defendant knew about the agreement and voluntarily joined. United States v. Iriele, 977 F.3d 1155, 1169 (11th Cir. 2020) (citation omitted). The supporting affidavit provided the background and twenty years of experience of TFO Livingston, (Aff., pp. 1-3); identified the wiretap targets and goals of the investigation, (id. at 3-6); discussed at length the investigation of Defendants Cody and Kenyatte Harden and others purportedly within their organization, including their relationships and connections with

7

each other, (id. at 7-16), as well as confidential and other source information provided on the drug distribution activities of Cody and Kenyatte Harden, (id. at 16-25); and set forth the information concerning activities of suspected members of the Harden DTO, (id. at 25-48).

TFO Livingston asserted there was probable cause to believe the TT1 wiretap would uncover critical facts about the scope of the DTO, including the nature, extent, and methods of drug importation and distribution; identities, locations and roles of co-conspirators including supply sources; distribution and transfer of funds and contraband; location of records, financial resources, and ill-gotten proceeds; and other telephones used to further the conspiracy. (Id. at 25-26.) As evidence of an overarching conspiracy, TFO Livingston relied on information from confidential and other sources that Cody Harden sold and delivered drugs provided by Kenyatte Harden, whom sources described as one of the biggest drug dealers in Treutlen County, and was Kenyatte's "main man" or "right hand man" to such an extent the two were known as a mafia. (Id. at 28-29, 31, 33, 39.) Sources who have known both Kenyatte and Cody for years provided information about (1) drug trafficking by the two based on direct observations and interactions with other targets; and (2) Cody's standing as a lieutenant in the organization and his participation in drug runs with another target of the wiretap. (Id. at 21-22, 24, 27.)

The affidavit also alleged that targets of the wiretap distributed cocaine for Cody Harden and were present for drug transactions conducted by him. (Id. at 11, 28.) A confidential source disclosed where Cody Harden hid controlled substances and identified a person who was distributing for him and arrested for so doing. (Id. at 28.) Further, the government presented information concerning Cody Harden's trap house and a multitude of

8

drug deals from that location. (Id. at 26-27.) Multiple persons, including a target of the wiretap, had been physically assaulted or had a "contract" placed by Cody and Kenyatte Harden for stealing drugs or failing to pay for them. (Id. at 27, 33-34.) For all the reasons outlined above, the affidavit easily establishes probable cause for a drug conspiracy.

Defendants relatedly challenge the information from confidential sources as lacking the requisite veracity and basis of knowledge or independent verification by law enforcement. (See, e.g., doc. no. 303, pp. 20-21 (citing United States v. Martin, 297 F.3d 1308, 1314 (11th Cir. 2002) and United States v. Langford, 312 F. App'x 259, 263 (11th Cir. 2009).) As the government's response notes, (see, e.g., doc. no. 356, p. 13 (citing Aff., pp. 16-25)), the affidavit is replete with pages of identifying information about each confidential source of information and detailed explanations of their bases of knowledge and independent verifications of their information. Multiple sources confirmed Cody and Kenyatte Harden were working together and with others to distribute controlled substances. The affidavit supplied more than sufficient information to conclude there was a fair probability of the existence of a drug distribution conspiracy, as well as the association of multiple other targets of the wiretaps, engaging in coordinated efforts to distribute illegal drugs, and these coordinated efforts were associated with TT1.

2.   **The Standard for Evaluating Necessity**

In addition to the probable cause requirement, a wiretap application must satisfy the "necessity" requirement of 18 U.S.C. § 2518(1)(c). The court has "broad discretion" in analyzing necessity, and courts must read supporting affidavits in a practical and common sense fashion." United States v. Hawkins, 934 F.3d 1251, 1258 (11th Cir. 2019); Alonso, 740

F.2d at 868. To meet this necessity requirement, the government affidavit in support of the application "must include 'a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous.'" United States v. Maxi, 886 F.3d 1318, 1331 (11th Cir. 2018) (citation omitted). This requirement is designed to make sure electronic surveillance is not routinely used or invoked when less intrusive techniques will succeed, but the government's burden to establish necessity is "not great." Graham, 2021 WL 2593630, at *16 (citing United States v. Van Horn, 789 F.2d 1492, 1495-96 (11th Cir. 1986) and United States v. Acosta, 807 F. Supp. 2d 1154, 1239 (N.D. Ga. 2011)).

Notably, however, § 2518 "does not foreclose electronic surveillance until every other imaginable method of investigation has been unsuccessfully attempted," but it does require a showing by the government why other investigative techniques are inadequate for the circumstances. United States v. Leflore, 653 F. App'x 703, 707 (11th Cir. 2016) (*per curiam*); Van Horn, 789 F.2d at 1496 ("The affidavit need not, however, show a comprehensive exhaustion of all possible techniques, but must simply explain the retroactive or prospective failure of several investigative techniques that reasonably suggest themselves.") Moreover, the use of a wiretap is not foreclosed by any partial success employing alternative investigative measures. Goldstein, 989 F.3d at 1195. Importantly, the wiretap application need not exclude "every possible line of inquiry," and a wiretap authorization "will not be overturned simply because defense lawyers are able to suggest *post factum* some investigative technique that might have been used and was not." Alonso, 740 F.2d at 868, 869 (citations omitted). Defendants have the burden of overcoming the presumption of validity and proving Judge

10

Bowen incorrectly found that the necessity requirement had been met. United States v. Holland, CR 420-124-21, 2021 WL 6500274, at *3 (S.D. Ga. Oct. 19, 2021), *adopted by* 2021 WL 5985012 (S.D. Ga. Dec. 16, 2021).

Fifteen pages of TFO Livingston's affidavit describe alternative investigative techniques that had been considered or used in the investigation of the Harden DTO. (Aff., pp. 52-67.) The crux of Defendants' necessity argument is the wiretap was more of a convenience than a necessity because other traditional investigative methods had not yet been tried or had yielded some results and could have been further utilized. The government counters TFO Livingston sufficiently explained why more traditional, alternate investigative techniques would not suffice to achieve the overall goal of uncovering the full scope of the conspiracy. The government is correct.

In meeting its burden to establish necessity, the government explained Cody and Kenyatte Harden were two of several targets of the investigation, which had several objectives.

> The overall goal of the investigation was to disrupt and dismantle the DTO. TFO Livingston expected the wiretap to further that goal by identifying the local wholesale distributors and members of the organization; determining the breadth of the DTO's operations; uncovering the methods of acquisition and distribution of narcotics; identifying the co-conspirators and associates; identifying the relationship between financiers, transporters, suppliers, and distributors of controlled substances; and the collection and distribution of monies that stem from or finance the illegal drug activities.

(Doc. no. 356, p. 4 (citing Aff., p. 48).)

Defendants argue the limited success of traditional techniques over a years-long investigation shows a wiretap was not necessary, but as the affidavit explained, the overall goal of dismantling the DTO had not been achieved. As thoroughly detailed in the

11

government's opposition to the motions to suppress, (id. at 3-11), the affidavit contained twenty-three pages of detailed information about the investigation to date, including the limited success of controlled purchases, information from confidential and other sources of information, results from recorded phone calls, and evidence uncovered by the execution of a search warrant. (Aff., pp. 25-48.) For example, confidential and other sources of information were helpful to a point but unable to fully provide information about the scope of the Harden DTO, location of drugs, or the supply source. (Id. at 53-58.) Cody and Kenyatte Harden shared information on a need-to-know basis and did not divulge anything more about the DTO than was essential for a specific transaction. (Id. at 50, 53-54.) They were distrustful of people in their hometown, whom they had known all their lives, and therefore were unlikely to trust a newly introduced undercover agent with whom they had not previously engaged in drug transactions. (Id. at 59, 60.)

Moreover, the DTO largely operated in a small town where Cody and Kenyatte Harden, as well as suspected co-conspirators, relied on video camera and neighbors conducting countersurveillance to alert them to the presence of law enforcement. (Id. at 59.) Also, many of the drug transactions occurred in a pool hall to prevent surveillance; a controlled purchase could only be partially observed by law enforcement because the transaction occurred inside the pool hall. (Id. at 37-39, 59.) In any event, physical surveillance, while helpful to confirm meetings or suspected criminal activity, does not provide information about the subject matter of a meeting or reveal plans for additional criminal activity or details about the suspected criminal conspiracy. (Id. at 58-60.) Few poles in the small town made pole cameras of limited use, particularly when many of the transactions occurred inside a pool hall, and a pole camera

installed approximately two years prior to the wiretap request yielded observations of *zero* drug transactions during its months-long use. (Id. at 64-65.)

Grand jury subpoenas had been considered and rejected, as targets required to appear would likely invoke their rights against self-incrimination and would likely have become more cautious in their activities. (Id. at 63-64.) Granting immunity to individuals without knowing the full breadth of their involvement could have short-circuited prosecution of some of the DTO's most culpable members. (Id. at 63.) Interviews with multiple subjects met with minimal success: recruitment of confidential sources yielded some results but not information necessary to dismantle the DTO; prior arrests yielded refusals to cooperate; and intentional compartmentalization of the drug trafficking activity limited information that subjects would have about Cody and Kenyatte Harden. (Id. at 62-63.) Moreover, additional interviews could have alerted the targets to the investigation, resulting in the destruction or concealment of evidence, as well as flight from the jurisdiction. (Id. at 63.)

The affidavit similarly described the shortcomings of trash searches, mail covers, financial investigations, trackers, pen registers, and execution of further search warrants, including the potential to compromise the overall goal of dismantling the Harden DTO by alerting subjects to the investigation and the inability to uncover the methods of sourcing and distributing drugs, breadth of the DTO's operations, and identifying co-conspirators and associates. (Id. at 60-67.)

Here, although the investigation had developed some information about the Harden DTO using traditional investigative techniques, the efforts to date were of limited usefulness to determine the full scope of the enterprise or otherwise connect targets other than Cody and

Kenyatte Harden to the suspected conspiracy. The Eleventh Circuit has approved the use of wiretaps in cases where conventional investigative methods have met with limited success when attempting to uncover the overall breadth and depth of a conspiracy. See United States v. De La Cruz Suarez, 601 F.3d 1202, 1214 (11th Cir. 2010); see also United States v. Olmedo, 552 F. Supp. 2d 1347, 1365 (S.D. Fla. 2008) ("This circuit has repeatedly held that, where conventional techniques will not show the entire scope of the conspiracy, a wiretap is permissible, even in those situations where conventional techniques will allow for the arrest and conviction of some members.").

Indeed, the partial success of alternative investigative techniques does not demonstrate the government failed to meet the necessity requirement where the investigation to date had not revealed "the full extent of [the defendant's] criminal activities and his coconspirators." Perez, 661 F.3d at 582; see also Graham, 2021 WL 2593630, at *17 (denying motion to suppress where wiretap application provided "detailed description of law enforcement's use of conventional investigative techniques (those reasonable appropriate under the circumstances), which had failed to furnish sufficient evidence to dismantle the drug trafficking organization and successfully prosecute each of its members, and explained other methods were unnecessarily risky").

Defendants' reliance on non-binding Ninth Circuit case law is not persuasive. (Doc. no. 303, pp. 12-14.) In United States v. Gonzalez, 412 F.3d 1102, 1112 (9th Cir. 2005), the court affirmed granting a motion to suppress where the government's wiretap application failed to establish necessity. In that case, however, the initial investigation focused on an alleged conspiracy to smuggle aliens in the United States through a company's operations in

Arizona. Gonzalez, 412 F.3d at 1106. After wiretaps authorized for telephones in Arizona intercepted a call to an office in Los Angeles, California, the government received authorization for a wiretap of the Los Angeles office. Id. at 1107. In deciding the necessity requirement had not been met, the Ninth Circuit agreed the government had not appropriately utilized traditional investigative techniques before requesting the wiretap. Id. at 1112. Officers had only analyzed five days of pen registers and trap-and-trace information and had abandoned physical surveillance of the office because of a single failed incident of such. Id. at 1112-13. Furthermore, the affidavit described in conclusory terms an inability to detect any activities consistent with evidence previously gathered "because of the layout of the building and its location near a residential neighborhood." Id. at 1113.

In contrast here, the investigation was focused in and around one geographical location where the investigation had been concentrated for years, and the affidavit details multiple attempts to use traditional investigative techniques over an extended period of time that failed to achieve the overall goal of dismantling the Harden DTO. The affidavit also contains an extensive discussion of traditional investigative techniques that were considered and rejected. Unlike the insufficient application in Gonzalez and its dearth of information about the insufficiencies of other investigative techniques, TFO Livingston's affidavit amply described the necessity of a wiretap to achieve the goal of disrupting and dismantling the Harden DTO.

In sum, the affidavit explained the need for the wiretap in light of the unavailability of other investigative techniques that had been tried and failed or reached their maximum usefulness, were unlikely to succeed, or were too dangerous to attempt. Counsel's hindsight attempt to suggest some other investigative techniques could have been tried or further

employed is insufficient to overturn the wiretap authorization. See Alonso, 740 F.2d at 869. The government met its burden to demonstrate necessity to Judge Bowen when making the wiretap application, and Defendants have not overcome the presumption of validity that attaches to Judge Bowen's determination.

**B.     The Leon Good Faith Exception Applies if the Warrants Were Invalid for the Reasons Cited by Defendants, Which They Are Not**

Even if the Court were to conclude TFO Livingston's affidavit did not establish probable cause or necessity, the good faith exception to the exclusionary rule applies under United States v. Leon, 468 U.S. 897 (1984). The Eleventh Circuit has applied the good faith exception in the context of wiretap applications and concluded "[w]hen law enforcement officers act in good faith and in reasonable reliance upon a judge's [wiretap] order, exclusion is not warranted." United States v. Stowers, 32 F.4th 1054, 1067 (11th Cir. 2022) (citing Goldstein, 989 F.3d at 1196); see also Hawkins, 934 F.3d at 1259 (recognizing application of good-faith exception to wiretap applications and authorizations).

The exclusionary rule deters Fourth Amendment violations by preventing use of evidence seized by an illegal search. Martin, 297 F.3d at 1312. The Leon good faith exception allows the introduction of evidence in the prosecution's case in chief that is "seized by officers reasonably relying on a warrant issued by a detached and neutral magistrate." Leon, 468 U.S. at 913. The Leon good faith exception does not apply where the judge issuing the warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth. Id. at 923. Nor does the exception apply in cases where the issuing judge "wholly abandoned" his or her detached and neutral judicial role

such that no reasonably well-trained officer would rely on the warrant.  Id.  The warrant must not be based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," and the warrant must not be so "facially deficient" that the executing officers could not reasonably presume it was valid.  Id.

The Leon Court explained that the good faith exception to the exclusionary rule was appropriate because "the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates."  Id. at 916.  Thus, under Leon, the question becomes whether the officers executing the warrant reasonably relied on the issuing judge's determination of probable cause.  See id. at 913; see also United States v. Herring, 492 F.3d 1212, 1215 (11th Cir. 2007) ("[T]he exclusionary rule does not bar the use of evidence obtained by officers acting in good faith reliance on a warrant which is later found not to be supported by probable cause.").

Here, there is no evidence of false information or reckless disregard of the truth.  Nor is there evidence Judge Bowen "wholly abandoned" a detached and neutral role in issuing the wiretap order.  Finally, the wiretap authorization is not so facially deficient in any respect, particularly with regard to the issues of probable cause or necessity, that the executing officers could not reasonably presume it to be valid.  In sum, even if probable cause or necessity had not been established, the Leon good faith exception would still bar application of the exclusionary rule.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Defendants' motions to suppress be **DENIED** without an evidentiary hearing. (Doc. no. 303, 314, 317, 387.)

SO REPORTED and RECOMMENDED this 1st day of May, 2023, at Augusta, Georgia.

*[Signature]*
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA